ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
LLOYD F. LEROY, ESQ., S.B. #203502
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| KATHY LEECH, as Wrongful Death Heir, and as Successor-in-Interest to CECIL LEECH, Deceased; and KIM WOODMANCY and JAMES LEECH, as Legal Heirs of CECIL LEECH, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>TODD SHIPYARDS CORPORATION,<br><br>Defendant. | No. C08-1255-JCS<br><br>COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS;<br><br>DEMAND FOR JURY TRIAL |

## I.

## PARTIES

1.  Plaintiffs in this action are the above captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs".

2.  The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: CECIL LEECH died March 6, 2007. KATHY LEECH is the spouse of CECIL LEECH and is hereinafter referred to as "surviving spouse".

3.     Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at decedent's jobsites.  The pathogenesis of decedent's asbestos-related diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

4.     All of plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the decedent, resulting in cumulative, progressive, incurable lung diseases.

5.     Each plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by decedent, caused serious lung disease. The allegations of plaintiffs regarding the nature of decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the State of California.

////
////
////
////

**II.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

7.   <u>Jurisdiction</u>:  Plaintiffs KATHY LEECH, KIM WOODMANCY and JAMES LEECH are citizens of the State of California.  Defendant TODD SHIPYARDS CORPORATION is a corporation incorporated under the laws of and having its principal places of business in the State of Washington.

8.   <u>Venue / Intradistrict Assignment</u>.   Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred within the County of San Francisco, California, and all of the defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence - Survival)

PLAINTIFF KATHY LEECH AS SUCCESSOR-IN-INTEREST TO THE DECEDENT CECIL LEECH COMPLAINS OF DEFENDANTS TODD SHIPYARDS CORPORATION THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM;   EACH FOR A COUNT FOR NEGLIGENCE (SURVIVAL) ALLEGE AS FOLLOWS:

9.   At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION |
| | SEATTLE-TACOMA SHIPBUILDING CORP. |

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons".

12. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14. Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

16. Plaintiffs are informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17. Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19. As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to

amend this complaint accordingly when the true and exact costs are known or at time of trial.

20. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons", including Decedent herein, giving rise to decedent's claim herein alleged for punitive

1  damages against said defendants.

2  WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as
3  hereinafter set forth.

4  <center>SECOND CAUSE OF ACTION</center>

5  <center>(Products Liability - Survival)</center>

6  PLAINTIFF KATHY LEECH AS SUCCESSOR-IN-INTEREST TO THE DECEDENT CECIL
7  LEECH COMPLAINS OF DEFENDANTS TODD SHIPYARDS CORPORATION THEIR
8  "ALTERNATE ENTITIES,"AND EACH OF THEM;   EACH FOR A SECOND, SEPARATE,
9  FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY
10 (SURVIVAL), COMPLAIN AS FOLLOWS:

11  26.   Plaintiffs incorporates herein by reference, as though fully set forth herein, each
12 paragraph of the First Cause of Action  herein.

13  27.   Defendants, their "alternate entities", and each of them, knew and intended that
14 the above-referenced asbestos and asbestos-containing products would be used by the purchaser
15 or user without inspection for defects therein or in any of their component parts and without
16 knowledge of the hazards involved in such use.

17  28.   Said asbestos and asbestos-containing products were defective and unsafe for
18 their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
19 and/or death.  The defect existed in the said products at the time they left the possession of
20 defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause
21 personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
22 persons", including Decedent herein, while being used in a reasonably foreseeable manner,
23 thereby rendering the same defective, unsafe, and dangerous for use.

24  29.   "Exposed persons" did not know of the substantial danger of using said products.
25 Said dangers were not readily recognizable by "exposed persons".  Said defendants, their
26 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
27 which Decedent and others similarly situated were exposed.

28 ////

30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

31.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

34.     Plaintiffs alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

35.     Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent suffered permanent injury and death as alleged herein.

36.     As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF KATHY LEECH, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO CECIL LEECH DECEASED, AND PLAINTIFFS KIM WOODMANCY and JAMES LEECH AS LEGAL HEIR OF DECEDENT, COMPLAIN OF DEFENDANTS TODD SHIPYARDS CORPORATION THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.     Plaintiffs incorporates by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38.     The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

39.     The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.     As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41. At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42. As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of decedent's heirs.

43. As a further direct and proximate result of the conduct of defendants, and each of them, and the death of decedent, decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF KATHY LEECH, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO CECIL LEECH DECEASED, AND KIM WOODMANCY and JAMES LEECH AS LEGAL HEIRS OF CECIL LEECH, COMPLAIN OF DEFENDANTS TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44. Plaintiffs incorporates herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45. As a direct and proximate result of the conduct of defendants, and each of them, decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

////

////

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities", and each of them in an amount to be proved at trial in each individual case, as follows:

(a) For plaintiffs' general damages according to proof;

(b) For plaintiffs' loss of income, wages and earning potential according to proof;

(c) For plaintiffs' s medical and related expenses according to proof;

(d) For plaintiffs' cost of suit herein;

(e) For exemplary or punitive damages according to proof;

(f) For damages for fraud according to proof; and

(g) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: February 27, 2008            BRAYTON❖PURCELL LLP

/s/ Lloyd F. LeRoy

By: _____
Lloyd F. LeRoy
Attorneys for Plaintiffs

### JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: February 27, 2008            BRAYTON❖PURCELL LLP

/s/ Lloyd F. LeRoy

By: _____
Lloyd F. LeRoy
Attorneys for Plaintiffs

EXHIBIT A

Decedent:  **CECIL LEECH**

Decedent's injuries:  Decedent was diagnosed with Decedent was diagnosed with asbestosis on or about June 1999 and died on March 6, 2007.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center San Diego, CA | Boatswains Mate | 1955 (6 weeks) |
|  | Bikini Atoll, Marshall Islands, (RMI) |  | 1956 (6 months) |
|  | BADOENG STRAIT (CVE-116) |  | 1956-1959 ( A few months) |
|  | BENNINGTON (CV-20) |  | 1956- 8/25/1959 ( A few months) |

Job Duties: Decedent cleaned compartments, painted and maintained motor launches.  Decedent transported men between the ship and the shore.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Riverside Cement Company Riverside, CA | Riverside Cement Company Riverside, CA | Loader | 1959 (1 year) |

Job Duties: Decedent loaded bags of cement onto trucks by hand.


////


K:\Injured\108864\FEDERAL\Exhibit A to Complaint (Leech).wpd

1

EXHIBIT "A"

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rohr Aircraft Riverside, CA | Rohr Aircraft Riverside, CA | Laborer | 1960-1961 |

Job Duties: Plaintiff is currently unaware of decedent's job duties during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Riverside Cement Company Riverside, CA | Riverside Cement Company Riverside, CA | Loader | 1961-1966 |
| | | Truck Driver | 1966-1967 (1 year) |
| | | Utility Man | 1967-1979 |

Job Duties: As a bulk loader, decedent loaded RIVERSIDE gun plastic cement into either a truck or a hopper. Decedent also released RIVERSIDE gun plastic cement from a chute in the silo and discharged it into a truck or hopper. Decent unloaded bags of raw asbestos that was delivered to the facility in large bales. Decedent cut the bags of raw asbestos and threw them onto a conveyor belt. Decedent was in proximity to where the bags were then fed into a rubber screw used to break up the asbestos and mix it with cement. Decedent broke apart pieces of asbestos and fed them into the mill. After the cement and asbestos were mixed together, the RIVERSIDE gun plastic cement was then placed in a silo. Decedent was responsible for cleaning the conveyors and the silos. Decedent cleared out chutes using air lines when the asbestos was clogged on the conveyor system. Decedent used asbestos rope to pack holes on the conveyor to stop leaks. Decedent dug and cleaned out large stock piles of RIVERSIDE gun plastic cement in the silos. As a truck driver, decedent drove a dump truck in a limestone mine. Plaintiff recalls decedent worked in a dusty environment and that decedent was not provided with respiratory equipment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Riverside Cement Company Riverside, CA | Riverside Cement Company Riverside, CA | Quality control inspector | 1979- 4/24/1998 |

Job Duties: Decedent tested samples of limestone and other materials by running them through screens.